UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

SETH LUPPINO,

    Plaintiff,

v.                                                                  Case No. 5:22-cv-117-JSM-PRL

LAKE COUNTY SHERIFF
PEYTON GRINNELL, in
his official capacity,

    Defendant.
_____/

**PLAINTIFF SETH LUPPINO'S AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL**

Plaintiff, SETH LUPPINO (hereafter "Luppino" or "Plaintiff"), pursuant to Federal Rules of Civil Procedure and an Order of this Court, files this Complaint and Demand for Jury Trial against Defendant LAKE COUNTY SHERIFF PEYTON GRINNELL in his official capacity (hereafter "the Sheriff's Office," "the Sheriff" or "Defendant"), and alleges the following:

**NATURE OF THE ACTION**

1. Plaintiff brings this action for the torts of malicious prosecution and defamation.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction because Luppino is seeking damages of more than $75,000 for acts and omissions that occurred in Lake County, Florida, and because the Sheriff's Office, where Plaintiff was employed, is located in Lake County, which is in the Middle District of Florida.

3. Venue is proper because Plaintiff's claim arose in Lake County and the Sheriff's Office is located in Lake County, and because the acts in question took place in Lake County, which is in Middle District of Florida.

## PARTIES

4. Luppino was employed by the Sheriff from February of 2008 until he was terminated on October 26, 2017.

5. The Sheriff is a constitutional officer in charge of the Sheriff's Office, a law enforcement agency in Lake County, Florida.

6. Sheriff Peyton Grinnell has been the Sheriff of Lake County, Florida since he was elected in November of 2016.

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

7. Luppino has complied with all conditions precedent necessary to file this lawsuit.

8. The Amended Complaint complied with Fla. Stat. § 768.28(6) in that Plaintiff provided timely notice of his claims.

## FACTUAL ALLEGATIONS

9. Luppino was certified as a law enforcement officer by the Florida Department of Law Enforcement's Criminal Justice Standards and Training Commission on March 12, 2008. He was issued Law Enforcement Certificate Number 274451.

10. Luppino was arrested, prosecuted and terminated after Defendant falsely accused him of failing to report an incident of suspected child abuse.

11. Defendant wrongly accused Luppino of violating Fla. Stat. § 39.201, which mandates that law enforcement officers report incidents of child abuse.

12. Defendant also wrongly accused Luppino of violating Sheriff's Office policies by allegedly committing a criminal act and engaging in conduct unbecoming a law enforcement officer.

13. Prior to his termination, Defendant arrested Luppino by taking him into custody, depriving him of his liberty, and forcing him to spend six hours in jail like a common criminal.

14. Defendant continued to deprive Luppino of his liberty by subjecting him to a pretrial program that required him to incur costs and resulted in further restraints on his liberty.

15. During this time period, the Sheriff or his agents made numerous verbal and written statements to members of the media falsely accusing Luppino of placing the welfare of a child in danger and deliberately violating a child abuse statute, committing a criminal act and engaging in conduct unbecoming a law enforcement officer.

16. The Sheriff's Office made those statements to the media knowing that they would be disseminated to the public and subject Luppino to shame and humiliation.

17. Prosecutors eventually determined that there were insufficient facts to prosecute the underlying crime, the alleged sexual abuse. Therefore, the case against Luppino was dropped by prosecutors due to a lack of evidence.

18. The dismissal of charges against Luppino on October 2, 2018 supported his claim that he was maliciously prosecuted and falsely accused.

19. The claim was further strengthened when case against the alleged child abuser was dropped in July of 2021 after an extensive investigation determined that there was insufficient evidence to prosecute the stepfather of the teenage girl.

20. Despite the lack of evidence, the Sheriff's Office continued to make false and defamatory statements accusing Luppino of violating the child abuse statute and endangering the welfare of a teenage girl.

21. Even after the underlying sexual assault was thrown out, the Sheriff's Office continued its malicious prosecution by failing to sponsor Luppino's law enforcement certificate or to reinstate his employment.

22. The Sheriff aggressively pursued the prosecution of Lippino for failing to report a crime before the state ever determined whether the crime had actually occurred.

23. Defendant committed malice when they arrested Luppino, terminated his employment, deprived him of his liberty, caused him to lose his law enforcement certification, subjected him to pretrial conditions, and published false and defamatory statements before investigators determined that the underlying act of child abuse had actually occurred.

24. Defendant should have waited until the investigation into the alleged child abuse was completed before arresting, jailing and firing Luppino and subjecting him to the indignities and punishments of the criminal justice system.

25. Had Defendant not rushed to judgment, they would have discovered the complete lack of evidence against Luppino, and the lack of proof of any violation Fla. Stat. § 39.201. At the very least, Defendant should have known that the facts did not support charging Luppino with violating the mandatory reporting law.

26. By rushing to judgment, Defendant deprived Luppino of his freedom and liberty, his employment, his professional certification and his reputation in the field, which has made it nearly impossible for him to obtain employment in law enforcement and is likely to continue to have negative effects on his career into the future.

27. The criminal charges against Luppino falsely alleged that he failed to report a suspected incident of sexual abuse of a teenage girl that occurred approximately ten months before he was arrested and charged.

28. It is ironic that Luppino was charged with failing to report the alleged incident, even though he was the very person who actually reported the incident to law enforcement.

29. Luppino did not witness the alleged incident. He learned about it from the mother of a teenage girl, who claimed the girl was the victim. The mother had known about the alleged incident for months before talking to Luppino about it. However, the mother, who also was in law enforcement, never reported the alleged incident to authorities.

30. The failure to prosecute the mother further supports the lack of any evidence that such crime occurred, and supports Luppino's claim for malicious prosecution.

31. The mother first disclosed her suspicions about the alleged sexual abuse to Luppino in a late-night telephone conversation on September 7, 2017.

32. The mother was an officer with a local police department and her husband, who was also a law enforcement officer, was a friend of Luppino.

33. The mother called Luppino late at night or early in the morning because she suspected the girl's stepfather may have sexually assaulted her daughter.

34. The mother sought Luppino's advice because he was a friend of her husband, who was accused of the sexual assault.

35. Luppino advised the mother to file a report with law enforcement if she believed that her daughter was sexually assaulted.

36. The mother led Luppino to believe that she was going to report the suspected sexual assault to law enforcement.

37. Luppino did not contact law enforcement immediately because he was uncertain whether the mother's accusations were credible, since she sounded intoxicated and in a highly emotional state during their late-night or early morning telephone conversation.

38. Furthermore, the alleged incident had supposedly occurred some ten months earlier in November of 2016. The mother told Luppino her daughter had not complained about any similar incidents in recent months, and did not appear to be in immediate danger.

39. The girl did not tell her mother about the alleged incident until June of 2017, some seven months after it allegedly occurred.

40. The alleged victim is believed to have told her biological father about the alleged abuse in January of 2017, but he never reported it to law enforcement officers or social workers.

41. Due to the sensitive nature of the accusations and their questionable credibility, Luppino wanted to give the mother of the alleged victim the opportunity to report the incident to authorities before he intervened.

42. When the mother failed to report the incident after several days, on September 20, 2017, Luppino reported the suspected abuse to deputies at the Lake County Sheriff's Office.

43. Luppino reported the alleged ten-month-old incident within 13 days after the late-night conversation with the girl's mother.

44. Although Luppino reported the incident, Defendant accused him of violating a state law that requires law enforcement officers to report suspected child abuse.

45. Luppino was immediately arrested and falsely charged with "knowingly and willingly failing to report known or suspected child abuse."

46. The Sheriff on September 17, 2017 placed Luppino on administrative leave pending the outcome of an investigation into the charges.

47. Defendant criminally charged Luppino on September 22, 2017 after he was deliberately misled by Chief Deputy Jerry Craig who assured him that under the circumstances, it was unlikely that criminal charges would be filed.

48. Luppino was arrested, processed and jailed like a common criminal. He was booked into the Lake County Jail and required to post a bond of $12,000. He spent six hours in jail before being released on bond.

49. Prosecutors eventually dropped the criminal charges and declined to prosecute Luppino due to a lack of evidence.

50. Nearly a year after Luppino's arrest, State Attorney Jonathan Olson filed a "nolle prosequi" notice on October 2, 2018 stating that the "case does not warrant prosecution."

51. Before the charges were dropped, Luppino was forced to participate in nine months of Pretrial Intervention, which involved financial payments and more deprivations of liberty for a crime that he did not commit.

52. During the Pretrial Intervention period, Luppino suffered deprivations of his liberty and financial costs. He was forced to provide monthly reports to and attend meetings with a probation officer. Luppino also was required to allow the officer access to his home, pay the Florida Department of Corrections $52 per month, restrict travel, verify his employment, submit to drug tests, and pay court costs.

53. Defendant terminated Luppino's employment on October 26, 2017, despite the lack of evidence that Luppino violated Fla. Stat. § 39.201.

54. Luppino was terminated in a memorandum from Chief Deputy Craig notifying him of the effective date of his dismissal as well as the cessation of his insurance benefits and contributions to his retirement program.

55. The termination notice stated that Luppino was being fired "for not reporting a sexual offense" on a child, a charge that was never substantiated.

56. Additionally, as a result of the malicious prosecution and false statements by Defendant, Luppino's law enforcement license was suspended by the Florida Department of Law Enforcement Criminal Justice Standards and Training Commission ("FDLE Commission").

57. The FDLE Commission, based on the false and defamatory statements by Defendant, charged Luppino with violating Florida statutes and regulations requiring law enforcement officers to be of good moral character.

58. Based on the malicious representations of Defendant, the FDLE suspended Luppino's law enforcement certificate for one year followed by two years of probation. The Commission also required Luppino to take ethics training and complete the Pretrial Intervention program.

59. After the criminal charges were dropped, Defendant should have immediately reinstated his employment, reimbursed his back pay, and allowed Luppino to return to his position at the Sheriff's Office.

60. At the very least, Luppino should have been reinstated after the criminal charges were dropped against the alleged sexual abuser. The failure to remedy the situation is further proof of the malicious intent of the Sheriff's Office.

61. The false allegations, malicious prosecution of criminal charges, and defamatory statements by Defendant against Luppino inflicted severe and irreparable damage to Luppino both professionally and personally.

62. The charges, arrest and incarceration, prosecution, and publication of defamatory statements severely damaged Luppino's career in law enforcement, destroyed his reputation in the community, and tore apart his family and social life.

63. Luppino has suffered severe emotional distress and public humiliation as well as severe harm to his professional and personal reputation from the false allegations made against him by Defendant.

64. As a direct result of the actions of Defendant, Luppino also has suffered damages, including lost wages and mental and emotional distress.

65. The actions by Defendant forced Luppino to incur large amounts of attorneys' fees. He was forced to hire an attorney to successfully defend the meritless criminal charges. He was forced to hire another attorney to challenge his termination and vindicate his rights in civil court.

66. Additionally, the actions by Defendant have forced Luppino to drop out of the Florida Retirement System and cash out his benefits at great loss of income in order to pay his legal bills from his criminal case.

67. As a result of Defendant's actions, Luppino has been unable to obtain employment in the field of law enforcement, his chosen career.

## COUNT I
## Malicious Prosecution

68. Luppino re-alleges and incorporates by reference into Count I paragraphs 1 through 67 of this Complaint.

69. During his employment with Defendant, Luppino was subjected to arrest and prosecution on criminal charges by Defendant.

70. As a result of that arrest, Luppino was taken into custody at his workplace in front of his peers and deprived of his personal liberty by being confined in the Lake County Jail and subjected to the criminal justice system.

71. Luppino was forced to comply with pre-trial requirements that over the course of several months deprived him of liberty and imposed a financial burden.

72. Defendant commenced the criminal case against Luppino without reasonable grounds to believe they could prove the allegations in the case, yet he continued to pursue the case to punish Luppino despite the lack of evidence that the alleged crime actually occurred.

73. Defendant maliciously prosecuted a criminal case against Luppino knowing that there were insufficient facts to support the charge.

74. Even if Defendant initially believed they had a legitimate reason to bring criminal charges against Luppino, they should have realized as the case proceeded that they lacked sufficient evidence to prove a violation of Fla. Stat. § 39.201.

75. The charges against Luppino were dismissed and ultimately resolved in favor of Luppino.

76. Charges against the person accused of the alleged sexual assault also were dismissed as prosecutors determined there was insufficient evidence to prove that the sexual assault actually took place.

77. After the lack of evidence became apparent, Defendant showed malice by failing to reinstate Luppino to his former position and by failing to sponsor his law enforcement certificate.

78. Defendant also showed malice by terminating Luppino's employment on October 26, 2017, despite the lack of evidence of any violation of the law.

79. After his incarceration, Defendants continued to use the criminal justice system to continue to punish Luppino, deprive him of his liberty, and tarnish his professional and public reputation.

80. Luppino was subjected to arrest and subsequent prosecution, even though the Sheriff's Office had no facts to support the charges.

81. Defendant used the legal process to deprive Luppino of his liberty and his ability to work in his profession and to subject him to public humiliation and shame.

82. Defendant commenced a criminal prosecution against Luppino which subjected him to aspects of the criminal justice system that are continuing to cause him damages to this day.

83. Defendant was the legal cause of the original proceeding against Luppino.

84. Defendant initiated the charges before conducting an investigation to determine whether or not the allegations were true.

85. An investigation was conducted long after Luppino's arrest which determined that the facts used to justify his arrest were either false or were unable to be confirmed.

86. The Sheriff's Office continued to pursue meritless charges against Luppino, even after it knew or should have known that the charges had no merit.

87. The outcome of the legal proceedings against Luppino were concluded in his favor when the prosecutor dismissed the charges against him due to lack of evidence.

88. Defendant acted with malice against Luppino, and as a direct result of the unwarranted actions of the Sheriff's Office, Luppino suffered damages.

89. Defendant continued to pursue the charges, even after a lengthy investigation concluded that there was insufficient proof that the sexual assault took place.

90. As a result of the actions of Defendant, Luppino suffered damages, including lost wages and emotional distress, and incurred attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Luppino respectfully asks this Court to award damages for the following:

(a) lost wages and benefits, including retirement benefits;

(b) front pay;

(c) compensatory damages for mental and emotional distress;

(d) interest;

(e) reasonable attorney's fees and costs pursuant to Fla. Stat. § 57.105; and

(f) any other relief the Court deems necessary.

## COUNT II
### Defamation
### Fla. Stat. § 626.9541

91. Luppino re-alleges and incorporates by reference into Count II paragraphs 1 through 67 of this Complaint.

92. Defendant knowingly made, published, disseminated, or circulated false statements about Luppino to the media and to other law enforcement officers, knowing they could not support the statements and that they would severely damage Luppino's career.

93. The statements were maliciously critical of or derogatory to Luppino in that they accused him of violating Florida law regarding the reporting of sexual abuse.

94. The statements, which accused Luppino of committing a crime, were made to third parties in the Sheriff's Office as well as to the news media.

95. The Sheriff's Office made these statements knowing they would be circulated by the media to the general public.

96. The statements that Luppino has committed an illegal act were defamatory per se, and therefore, were made with malice.

97. The statements were circulated among the general public through the news media in Central Florida.

98. Defendant knew or should have known that the statements were likely to be false.

99. The statements were false and defamatory and tended to expose Luppino to hatred, ridicule or contempt and caused injury to him in his business or occupation and severely damaged his reputation in the community.

100. The statements were so injurious on their face they amounted to slander and libel per se.

101. The statements by Defendant impute to Luppino conduct, characteristics, or conditions incompatible with the proper exercise of his profession as a law enforcement officer.

102. The false statements disparaged Luppino's professional competence and imputed incapacity or unfitness for his job as a law enforcement officer.

103. The statements by Defendant shows an intent to injure Luppino and therefore, constitute express malice.

104. Luppino was not a public figure, and therefore, does not need to show actual malice.

105. However, even if he was a limited public figure in his role as a law enforcement officer, Defendant acted with actual malice when it published false statements and released them to other members of the department and to the public.

106. As a direct result of the actions of the Sheriff, Luppino suffered damages and was forced to incur attorney's fees in order to vindicate his rights. The damages were proximately caused by the defamatory statements.

## **DEMAND FOR RELIEF**

WHEREFORE, Luppino asks the Court to award the following damages:

(a)      actual damages;

(b)      financial losses, including lost wages;

(c)       mental and emotional distress; and

(d)      injury to Plaintiff's professional and personal reputation, and to his standing in the law enforcement community; and

(e)      any other damages the court deems proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues and counts triable before a jury.

**[s] Alfred Truesdell**
ALFRED TRUESDELL
Florida Bar No. 885363
*Truesdell Law*
3521 Tyngsbourgh Drive
DeLand, Florida 32720
(407) 920-7392
truesdelllaw@gmail.com
Attorney for Seth Luppino